IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERRY L. COFFMAN,

        Plaintiff,

    vs.                                Civil Action 2:13-cv-1037
                                           Judge Graham
                                           Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

<u>REPORT AND RECOMMENDATION</u>

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is now before the Court on *Plaintiff's, Terry L. Coffman, Statement of Errors* ("*Statement of Errors*"), Doc. No. 14, and the *Defendant's Memorandum in Opposition*, Doc. No. 19.  Plaintiff has not filed a reply.

I.   **Background**

Plaintiff Terry L. Coffman filed his application for benefits on August 5, 2010, alleging that he has been disabled since August 22, 2009.  *PAGEID* 170-78.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on May 12, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Dr. Walter V. Walsh, who testified as a vocational expert.  *PAGEID* 40, 53.

In a decision dated July 20, 2012, the administrative law judge concluded that plaintiff was not disabled from August 22, 2009, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 47-48. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 14, 2013. *PAGEID* 33.

Plaintiff was 49 years of age on the date of the administrative law judge's decision. *See PAGEID* 48, 172. He has at least a high school education, is able to communicate in English, and has past relevant work as a journeyman pressman, route truck driver, and hopper feeder. *PAGEID* 46. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014. *PAGEID* 42. He has not engaged in substantial gainful activity since August 22, 2009, his alleged date of onset of disability. *Id*.

## II.  Medical Evidence

Plaintiff injured his back at work on August 7, 1992. *PAGEID* 290, 297. Since 1990, plaintiff has undergone three surgeries on his lumbar spine. *PAGEID* 301. In 1993, plaintiff underwent a lumbosacral fusion with plate and screws at L5-S1. *PAGEID* 279. In 2005, orthopedic surgeon Daryl R. Sybert, D.O., performed a three-level fusion from L3 to S1. *PAGEID* 266, 441, 455. In 2006, plaintiff reported to Dr. Sybert that pain in the lower extremities and low back had resolved. *PAGEID* 266.

A January 19, 2007 MRI of the lumbar spine revealed postoperative changes in the lower lumbar spine with fusion from L3 to S1 and fluid

2

collection along the posterior right lateral aspect of L4 and osterior to L5 and L5/S1.  *PAGEID* 243-44.  The MRI also revealed mild irregularity of the inferior T10 endplate posteriorly on the right compatible with a small Schmorl's node.  *Id*.  There was a small disc protrusion into the left lateral recess at T10/T11 with flattening of the ventral thecal sac left of the midline and moderate left lateral recess narrowing.  *Id*.

Dr. Sybert treated plaintiff for complaints of thoracic pain in 2007.  *PAGEID* 260.  At that time, plaintiff "progress[ed] well" in physical therapy for his thoracic spine disc herniation.  *PAGEID* 262.

A May 7, 2009 MRI of the thoracic spine showed mild/moderate right-sided disc protrusion/herniation at T6-T7 with mild cord impingement; mild to moderate right-sided disc protrusion/herniation at T11-T12 with mild to moderate right foraminal stenosis; and no significant interval change compared to plaintiff's 2007 MRI.  *PAGEID* 241.

Plaintiff saw Dr. Sybert again on May 26, 2009 for thoracic pain. *Id*.  On examination, plaintiff ambulated without an assistive device, his gait was normal, he had normal strength and sensation in the lower extremities, his reflexes were grade three in the patellar and grade two in the Achilles, his plantar response was downgoing, and no clonus was noted in the lower extremities.  *PAGEID* 260-61.  Dr. Sybert recommended thoracic epidural injections of the thoracic spine. He noted that plaintiff was not a surgical candidate.  *Id*.

3

Plaintiff saw Dr. Sybert again on February 2, 2010.  Clinical exam revealed normal reflexes, normal strength in the lower extremities, normal gait and station, no evidence of myelopathy, and absent thoracic sensory level.  *PAGEID* 258-59.  Dr. Sybert again noted that plaintiff was not a surgical candidate; he referred plaintiff to Stephen T. Woods, M.D., for thoracic epidurals and physical therapy. *Id*.

Plaintiff was evaluated by Arvin Gallanosa, M.D., on May 13, 2010.  *PAGEID* 300-03.  On examination, range of motion of the thoracic spine on flexion was limited to 20 degrees, on left rotation to 20 degrees, and on right rotation to 20 degrees.  *PAGEID* 302.  Range of motion of the lumbar spine on flexion was limited to 75 degrees, on left lateral flexion to 30 degrees, and on right lateral flexion to 25 degrees.  *Id*.  Straight leg raising yielded low back pain bilaterally. *Id*. Strength was 5/5 in the bilateral lower limbs throughout except for the right extensor halluces longus, which was 4/5.  Toe and heel standing, gait, stance, and balance were intact.  *Id*.  Dr. Gallanosa opined that plaintiff had reached maximum medical improvement for his lumbar conditions, with some pain, but that plaintiff was not prevented from working.  *Id*.  Plaintiff had not reached maximum medical improvement in connection with the thoracic herniated discs at T6-T7 or T10-T11.  *Id*.  Dr. Gallanosa referred plaintiff to Dr. Woods for thoracic epidural injections, physical therapy, and a TENS unit. *Id*.  According to Dr. Gallanosa, plaintiff could not return to his former employment, even with restrictions or modifications.  *Id*.  Dr.

4

Gallanosa further opined that plaintiff would be restricted for three months in his abilities to lift, bend, twist/turn, reach below the knee, push/pull, squat/kneel, stand/walk, sit, and lift above the shoulders. *PAGEID* 304.

Plaintiff saw Dr. Woods on March 10, 2010. *PAGEID* 246-49. On examination, Dr. Woods found no significant limitation with truncal range of motion, range of motion of the lumbar spine was limited on flexion and extension, there was normal truncal sensation and normal gait; plaintiff was able to walk on heels and toes and rise to a step without difficulty or evidence of gross motor deficits. *PAGEID* 247. Ankle jerks were absent bilaterally but muscle stretch reflexes were 2+ and equal at the knees. *Id*. Dr. Woods noted nondermatomal blunting in a patchy distribution over the feet. *Id*. Plaintiff had full range of motion without pain in his hip and 5/5 strength in his lower limbs. *PAGEID* 248. Dr. Woods assessed chronic mechanical thoracic pain due to underlying thoracic disc protrusions most prominent at T6-7 and T10-11 with pain pattern most consistent with T6-7 level. *Id*. He recommended thoracic epidural steroid injections. After three left T6 transforaminal epidural steroid injections, plaintiff reported "subtle improvement" and endorsed "a toothache sensation with increased activity." *PAGEID* 250. Dr. Woods then recommended physical therapy and a TENS unit. *PAGEID* 251.

Plaintiff underwent 21 physical therapy sessions from July through September 2010. *PAGEID* 323, 458. Plaintiff met his short term goals: *i.e.*, to lift 10 pounds overhead without pain and

5

push/pull 50 pounds. *PAGEID* 458. Plaintiff increased his lumbar range of motion on rotation to 90 percent within normal limits bilaterally, although he did not meet his goal of increasing his range of motion on AROM lumbar flexion to 45 degrees and bilateral side bending to 16 inches. *Id*.

Plaintiff was prescribed a lumbosacral back brace on April 12, 2010, *PAGEID* 305, received a TENS unit, *PAGEID* 299, 327, and underwent consistent treatment for medication management in 2010. *PAGEID* 362-408. Plaintiff frequently reported pain relief with medication. *PAGEID* 362-63 (December 2009: significant relief), 364 (January 2010: modest relief), 366 (February 2010: significant relief), 368 (March 2010: "finds relief"), 370 (April 2010: "finds relief from meds to be the best"), 372 (April 2010: same), 374 (May 2010: same), 379 (July 2010: "relief from meds, therapy"), 382 (August 2010: "finds relief from meds"), 404 (September 2010: "significant" relief), 406 (October 2010: "finds relief from meds"), 408 (November 2010: same), 410 (December 2010: same).

Plaintiff has treated with Charles B. May, D.O., since at least 2005. *PAGEID* 439. A January 22, 2009 evaluation revealed tenderness in the thoracic and lumbar spine with palpation, paraspinal muscle tenderness, myospasms and trigger points, and decreased range of motion in all planes of the thoracic and lumbar spine. *PAGEID* 353-54. Plaintiff had 5/5 strength in the lower extremities, his sensation was intact, and straight leg raises were negative bilaterally. *Id*. Dr. May noted similar findings on April 17, 2009, *PAGEID* 357 (although

6

also noting markedly decreased range of motion and positive straight
leg raise on the left while seated at 90 degrees), and on June 24,
2009.  *PAGEID* 315, 345-45.

Elizabeth Das, M.D., reviewed the record for the state agency
and, on October 28, 2010, opined that plaintiff was limited to
occasionally lifting and/or carrying 20 pounds, frequently lifting
and/or carrying 10 pounds, standing and/or walking for a total of six
hours in an eight-hour workday, and sitting for six hours in an eight-
hour workday.  *PAGEID* 108-09.  Plaintiff could frequently balance and
occasionally stoop, crouch, crawl, and climb ramps/stairs and
ladders/ropes/scaffolds.  *PAGEID* 109.

Maria Congbalay, M.D., another state agency physician, reviewed
the record and, on February 7, 2011, affirmed Dr. Das's assessment.
*PAGEID* 120-21.

Plaintiff was again seen by Dr. Sybert on September 29, 2011.
*PAGEID* 461-63.  On examination, plaintiff was alert and oriented to
person, place, and time.  *PAGEID* 462.  Mood and affect were
appropriate, gait and station were normal, sensation was intact, deep
tendon reflexes were normal and symmetrical without pathologic
reflexes, coordination and balance were normal, and there were no long
tract signs noted.  *PAGEID* 462.  Plaintiff had full range of motion
without pain and normal muscle strength and tone in all extremities.
*Id.*  Plaintiff's spinal exam revealed diffuse myofascial low back
pain, pain in the interscapular region bilaterally, and pain with
range of motion in all planes.  *Id.*  Dr. Sybert encouraged plaintiff

7

"to pursue permanent total disability as he will not be employable in regards to any significant lifting, bending, or twisting job." *PAGEID* 463.  Dr. Sybert also opined that plaintiff could not go "back to a light to sedentary job due to the mental/cognizant impairing effects of his medications including antispasmodics as well as opioids." *Id*.  Dr. Sybert also stated that plaintiff "is permanently disabled." *PAGEID* 464.

Plaintiff was consultatively evaluated by Denise L. Davis, M.D., in connection with his Worker's Compensation claim on July 8, 2011. *PAGEID* 465.  On examination, plaintiff had 5/5 strength, muscle stretch reflexes were 2+ with downgoing toes, and there was diminished sensation to pinprick over the entire left leg, calf, and foot compared to the right.  Plaintiff was able to heel walk with difficulty and toe walk.  There was tenderness to palpation over the lower thoracic paraspinal muscles.  Plaintiff's flexion and extension were both 20 degrees, lateral flexion was 15 degrees to the right and 20 degrees to the left.  Straight leg raise from a supine position was positive for pain in the buttock at 20 degrees on the left and at 40 degrees on the right.  *PAGEID* 466.  According to Dr. Davis, plaintiff had reached maximal medical improvement and no further treatment would afford plaintiff a significant fundamental, functional, or physiological change.  *PAGEID* 467.  Dr. Davis opined that plaintiff could not return to his previous work as a truck driver and "is not capable of any level of work."  *Id*.

8

Plaintiff was also evaluated by Nancy Renneker, M.D., on March 19, 2008, in connection with his Workers' Compensation claim. *PAGEID* 361-61, 412. According to Dr. Renneker, plaintiff has a 39 percent whole person impairment for that claim. *Id*. Stephen Phillips, CRC, CDMS, reviewed plaintiff's Workers' Compensation file and, on November 16, 2011, opined that plaintiff "is limited in his ability to compete in today's labor market" and that he "is a very unlikely candidate for any sustained, remunerative employment." *PAGEID* 469-73 (emphasis omitted). An *Ex Parte* Order dated February 8, 2012, appears to award plaintiff's workers' compensation attorney a lump sum advancement of attorney fees for services rendered in securing an award of compensation to plaintiff for permanent total disability. *See PAGEID* 459.

## III. Administrative Hearing

Plaintiff testified at the administrative hearing that, in January 2012, he was determined to be permanently disabled by the Bureau of Workers' Compensation for a back injury of 20 years' duration. *PAGEID* 66. Plaintiff had previously been awarded Social Security benefits for a closed period of disability from 2004 to 2007 due to his back injury. *PAGEID* 58. Plaintiff returned to work as a journeyman for a printer after that closed period, but that job ended in August 2009 due to complications from his back injury. *PAGEID* 67-69, 80-81.

Plaintiff has undergone three surgeries to the lumbar spine and he currently suffers from mid-thoracic back pain. *PAGEID* 74-77. He

9

experiences daily back pain: "[I]t's like having a tooth ache" that "aches all the time." *PAGEID* 83.  Plaintiff receives injection pain therapy, but that treatment relieves his back pain only temporarily. *Id*.  He rates his average back pain as six on a 10-point scale. *PAGEID* 83.

Plaintiff testified that he cannot work because of his back injury; he has no other physical or mental problems that would prevent him from working.  *PAGEID* 74, 79.  He cannot twist, turn, or bend and he cannot lift his arms above his shoulders without discomfort. *PAGEID* 77-78.  Plaintiff's back problems also cause difficulty sleeping.  *PAGEID* 81-82.  He can stand for 15 minutes at a time, sit for 30 minutes, walk one block, and lift one gallon of milk.  *PAGEID* 83-84.  Plaintiff testified that one of his medications makes him sleepy, so he tries to take it before going to bed.  *PAGEID* 81.

Plaintiff lives in a two story house; he climbs the 15 steps to the second floor about three times a day.  *PAGEID* 64-65.  He does no household chores and needs assistance in personal care.  *PAGEID* 85-87. He drives no more than three times a week, *PAGEID* 65, and he occasionally accompanies his wife to the store.  *PAGEID* 85.  He wears a back brace when he leaves his house.  *PAGEID* 59-62.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge.  *PAGEID* 90-91.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a journeyman, route truck

10

driver, or hopper feeder, but could perform such jobs as cleaner, assembly worker, and inspection worker. *PAGEID* 88-91

**IV.  Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of thoracic disc herniation at T6-7 and T10-11, status post lumbar spinal fusion from L3 to S1, radiculopathy, and spondylosis. *PAGEID* 42. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except [that he] can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but [he can] never climb ladders, ropes, or scaffolds. He can frequently balance. Further, the claimant must avoid exposure to hazards such as working around dangerous moving machinery and working at unprotected heights.

*PAGEID* 42-43. Although this RFC precludes the performance of plaintiff's past relevant work as a journeyman, route truck driver, and hopper feeder, the administrative law judge relied on the testimony of the vocation expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy. *PAGEID* 46-47. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from August 22, 2009, through the date of the administrative decision. *PAGEID* 47-48.

**V.  Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings

of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge improperly evaluated the medical evidence of record. Plaintiff specifically argues that the administrative law judge failed to follow the treating physician rule when evaluating Dr. Sybert's opinion and improperly evaluated the consultative opinion of Dr. Davis. *Statement of Errors*, pp. 4-6.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of
> [the claimant's] medical impairment(s) and may bring a

13

> unique perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Sybert performed a three-level fusion from L3 to S1 in
2005. *PAGEID* 266, 441, 455. Plaintiff thereafter treated with Dr.
Sybert at least eight times between November 2005 and September 2011.
*PAGEID* 461-63, 259-77. On September 29, 2011, Dr. Sybert encouraged
plaintiff "to pursue permanent total disability as he will not be
employable in regards to any significant lifting, bending, or twisting
job." *PAGEID* 463. Dr. Sybert also noted that plaintiff is precluded
"from going back to a light to sedentary job due to the
mental/cognizant impairing effects of his medications including
antispasmodics as well as opioids." *Id.* On September 29, 2011, Dr.
Sybert opined that plaintiff "is permanently disabled." *PAGEID* 464.

Dr. Davis evaluated plaintiff on July 8, 2011. *PAGEID* 465.
According to Dr. Davis, plaintiff had reached maximal medical
improvement and no further treatment would afford plaintiff a
significant fundamental, functional, or physiological change. *PAGEID*
467. Dr. Davis opined that plaintiff could not return to his previous
work as a truck driver and "is not capable of any level of work." *Id.*

The administrative law judge evaluated the opinions of Dr.
Sybert and Dr. Davis as follows:

> Dr. Sybert and Dr. Davis opined that the claimant cannot
> work on July 8, 2011 and September 29, 2011, respectively
> (Exhibits B-12F, 6, 9). Statements that a claimant is
> "disabled", "unable to work", can or cannot perform a past

14

job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such administrative findings are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. These opinions can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404.1527; SSR 96-5p). The undersigned finds Dr. Sybert's opinion is inconsistent with his finding on September 29, 2011, that the claimant has normal gait, normal station, and normal upper and lower extremities (Exhibit B-12F, 3-5). Likewise, Dr. Davis's opinion is inconsistent with her findings that the claimant has full muscle strength despite some moderate thoracic back pain (Exhibit B-12F, 7-10). Therefore, no weight is given to the unsupported, general findings provided by Dr. Davis and Dr. Sybert.

*PAGEID* 45.

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Sybert's opinion and the reasons for assigning that weight. Under the circumstances, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Further, the administrative law judge's reasons for assigning no weight to Dr. Sybert's opinion are supported by substantial evidence. Dr. Sybert's opinion that plaintiff "will not be employable in regards to any significant lifting, bending, or twisting job," that plaintiff

15

is precluded "from going back to a light to sedentary job due to the mental/cognizant impairing effects of his medications including antispasmodics as well as opioids," and that plaintiff "is permanently disabled," *PAGEID* 463-64, are "tantamount to a disability opinion, a matter reserved to the Commissioner for determination." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011). *See also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.*, that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)(1)). Moreover, to the extent that Dr. Sybert's opinion could be construed to be a medical opinion about limitations in lifting, bending, or twisting or based on mental/cognizant impairing effects of medication, such limitations are not supported by Dr. Sybert's September 29, 2011 treatment notes, which show a normal neurological examination. *See PAGEID* 461-63. As noted by the administrative law judge, *see PAGEID* 45, a significant limitation in lifting, bending, or twisting could be inconsistent with Dr. Sybert's finding that plaintiff has a normal gait, normal station, and normal upper and lower extremities. There is also no suggestion of any mental limitations in Dr. Sybert's treatment notes. *See PAGEID* 462-43.

16

As a one-time consultative examiner, Dr. Davis is properly classified as a nontreating source. *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). In considering the opinion of a nontreating source "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'[the claimant]." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). In determining how much weight to give the opinion of a nontreating source, an administrative law judge should still "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Davis's opinion and the reasons for that assignment. It is also apparent that the administrative law judge considered the appropriate factors in evaluating Dr. Davis's opinion. Plaintiff argues that Dr. Davis's opinion that plaintiff is "permanently totally disabled" should have been given greater weight: "For the ALJ to dismiss Dr. Davis's very well written opinion I think

17

is an error.  Dr. Davis examined Mr. Coffman on behalf of the Ohio Bureau of Workers' Compensation as an Independent Industrial Commission's Specialist.  She found Mr. Coffman to be permanently totally disabled and hence benefits were awarded.  She is a medical doctor and I have no idea why the ALJ would discount her opinion." *Statement of Errors*, p. 6.  However, as noted *supra*, opinions of disability are reserved to the Commissioner.  *See Payne*, 402 F. App'x at 112.  Moreover, the Commissioner is not bound by a determination of disability made by the State of Ohio.  20 C.F.R. § 404.1504 ("[A] determination made by another agency that you are disabled or blind is not binding on us.").

Plaintiff next argues that the administrative law judge erred in relying on the testimony of the vocational expert.  *Statement of Errors*, pp. 7-9.  Plaintiff specifically argues that the administrative law judge erred by "choos[ing] what answers he wanted to take from the vocational expert and not tak[ing] the vocational experts [sic] testimony as a whole."  *Id.* at p. 9.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516.  "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible."  *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856,

865 (6th Cir. 2010) (citing *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

> The administrative law judge found that plaintiff has the RFC to
>
> perform light work as defined in 20 CFR 404.1567(b) except can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance. Further, the claimant must avoid exposure to hazards such as working around dangerous moving machinery and working at unprotected heights.

*PAGEID* 42-43. The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile who is limited to light exertion and who "would be limited to the light exertional level, would be unable to climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, could occasionally stoop, kneel, crouch, and crawl. Could frequently balance. Would also need to avoid hazards such as unprotected heights and working around moving machinery." *PAGEID* 90-91. The vocational expert responded that such a claimant could not perform plaintiff's past relevant work, but could perform such jobs as cleaner, assembly worker, and inspection worker. *PAGEID* 91. The administrative law judge relied on this portion of the vocational expert's testimony in determining that plaintiff can perform a significant number of jobs that exist in the national economy, even though he could not his past relevant work. *PAGEID* 46-47.

It is plaintiff's position that the administrative law judge erred in not accepting the vocational expert's testimony in response to hypotheticals containing alternative and additional limitations.

*Statement of Errors*, pp. 8-9. It is true that the administrative law judge and plaintiff's counsel posed different hypotheticals to the vocational expert, which contained different functional limitations. *See PAGEID* 91-96. Nevertheless, the administrative law judge relied only on the hypothetical posed to the vocational expert that included all of the limitations contained in the RFC eventually found by the administrative law judge. The administrative law judge therefore did not err in relying on the vocational expert's testimony in this regard. *See Parks*, 413 F. App'x at 865 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. . . . Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.") (internal citations and quotations omitted).

Plaintiff also challenges the administrative law judge's credibility determination. *Statement of Errors*, p. 9. Plaintiff specifically argues that the administrative law judge erred in his credibility determination because plaintiff has undergone significant treatment for his back injury and has an excellent work history. *Id.*

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey*, 987 F.2d at 1234. *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an

20

underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." *PAGEID* 44. In making this determination, the administrative law judge

21

evaluated the evidence and found that "the longitudinal medical evidence does not support the existence of the extreme symptoms and functional limitations alleged by the claimant." *Id*.  The administrative law judge also found, *inter alia*, that, "based on the numerous normal strength and gait findings, and considering the reports of reduced range of motion of the lumbosacral spine, . . . the objective medical evidence is fully consistent with the [RFC assessment] and inconsistent with the claimant's allegations of disabling symptoms." *PAGEID* 45.  The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of his credibility determination.  The analysis and credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not – and indeed may not - revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

       Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

       If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part

22

thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


September 18, 2014                              *s/Norah McCann King*
                                               Norah M<sup>c</sup>Cann King
                                        United States Magistrate Judge